In the Matter of the Application of MARY WOOD HOGAN, Appellant, against JOSEPH J. CANAVAN and Others, Commissioners of the Division of Parole of the Executive Department of the State of New York, Respondents, for an Order of Certiorari to Review the Cause and Record of the Detention of LEWIS HOGAN.

Second Department, November 1, 1935.

*John C. Judge*, for the appellant.

*Charles A. Schneider, Assistant Attorney-General* [*John J. Bennett, Jr., Attorney-General*, and *Robert P. Beyer, Assistant Attorney-General*, with him on the brief], for the respondents.

DAVIS, J. The petitioner, who says she is the common-law wife of Lewis Hogan, makes application in his behalf for an order of certiorari to review the action of the Commissioners of the Division of Parole of the Executive Department of the State of New York (formerly called Parole Board) in declaring Hogan a delinquent and directing that he be returned to State's prison as a parole violator.

In May, 1930, Hogan was convicted of the crime of robbery and was sentenced to imprisonment in a State prison for the indeterminate term of from four to ten years. At the end of two years of his term he was released on parole under certain conditions, the terms of which are not contained in the record. Hogan was at liberty for two years; and it is said in his behalf that during that period he conducted himself with propriety and in full compliance with all the requirements of the Commissioners of Parole and was gainfully and honestly employed. This is denied in the answer of the Commissioners. It is stated in the petition as a possible reason for the declaration of delinquency and the issuance of a warrant for his return to prison that, at the time, he was employed as a porter in a barroom and had secured a license to drive an automobile without notifying his parole officer that he had procured such automobile license. It is denied in the answer of the Commissioners that these were the grounds of delinquency; but the actual reasons are not stated.

Article 8 of the Correction Law (formerly the Prison Law) provides for the granting of paroles to those who have been convicted of crime and have served a part of their sentence. In brief, the Commissioners are charged with the duty of determining what prisoners serving an indeterminate sentence shall be released on parole, and when and under what conditions. They are also charged with the duty of supervising all prisoners released on parole, of making such investigations as may be necessary, of determining whether violation of parole conditions exists in specific cases, and of aiding paroled prisoners to secure employment. Good conduct on the part of the prisoner or efficient performance

of duties assigned in prison does not give the right to parole as a reward; but these facts are considered by the Commissioners in forming an opinion as to whether there is reasonable probability that if the prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. The parole is not granted upon the application of the prisoner, but solely upon the initiative of the Commissioners of Parole. The warden reports as to the prisoner's conduct, and other investigation is made. This furnishes a basis for the exercise of discretion; but before any prisoner is released he must appear before them and be personally examined before a conclusion is reached as to the desirability of releasing him. His release is granted only upon the unanimous vote of the Commissioners.

It is further provided that the Commissioners in releasing a prisoner shall specify in writing the conditions of his parole, with which he is furnished a copy. A violation of these conditions may render the prisoner liable to rearrest and imprisonment. The Commissioners also adopt general rules and may make special rules to govern particular cases — such as that the prisoner shall abandon evil associates and ways. The released prisoner is under the control and supervision of a parole officer, and when such officer has reasonable cause to believe that the prisoner has lapsed or is about to lapse into criminal ways or company, or has violated the conditions of his parole in an important respect, then a warrant may be issued for retaking the prisoner and returning him to prison. When such a situation arises and has been reported to the Commissioners, at their next meeting they may declare the prisoner to be delinquent. He is given an opportunity to appear in person, but not through counsel or others, and explain to the Commissioners the charges made against him. The Commissioners then, within a reasonable time, act upon the charges and may, if they see fit, require the prisoner to serve out the balance of the term for which he was originally sentenced.

From this condensed statement of the provisions of the law it is readily apparent that the proceedings by which a prisoner is paroled and those by which his period of parole is ended are not judicial or *quasi*-judicial in their nature and do not result in a judicial determination by a tribunal. The Commissioners, as their title implies, are executives and their acts are administrative in character. They exercise discretion in determining that a prisoner shall be paroled. No application for parole is permitted to be made by him or in his behalf. He can offer no evidence nor be represented by counsel. His release on parole, like a pardon, is an act of grace.

There is no appeal or review by him or by any one else in respect to granting or refusing a parole. Very likely it often happens that the Commissioners are deceived or exercise bad judgment in granting parole to one entirely unworthy, who has no purpose to refrain from criminal activities. It is now commonly known that recently many paroled prisoners have committed crimes of violence; but there is no remedy except by the acts of the Commissioners themselves.

When the Commissioners determine that a paroled prisoner has violated the terms of his parole or is not a safe person to be at large, and the welfare of society requires that he be returned to prison, the act of declaring his delinquency and directing that he return to prison to serve the remainder of his term is likewise one of discretion and judgment based on a more or less complexity of facts often not susceptible of strictly legal proof. It is deemed best for the prisoner, or more likely for the welfare and safety of society, that the term of grace should end. The prisoner in a measure is protected against purely arbitrary action, for he is given an opportunity to explain the charges, and the Commissioners then act. But if their action is or appears to be arbitrary, there is no remedy. The act of grace by which he has benefited has been withdrawn, and he must serve out the term for which he was originally sentenced. There can be no judicial review of executive or administrative acts involving individual judgment or discretion. The court cannot possibly have before it the same facts or information that led the Commissioners to act.

Any other view would lead to a new hearing for a condemned criminal in which the whole subject of his conduct since parole and the welfare of society would have to be determined. (*People ex rel. Romain* v. *Parole Commission of City of New York*, 116 Misc. 758; affd., 205 App. Div. 840.) The whole parole system would be farcical and unworkable if every paroled prisoner had the right to review the acts of this executive body. The same question in principle has been presented in habeas corpus proceedings with the same result. (*People ex rel. Ross* v. *Lawes*, 227 App. Div. 464; *People ex rel. La Placa* v. *Heacox*, 238 id. 217.)

The order denying the application for an order of certiorari should be affirmed.

LAZANSKY, P. J., SCUDDER, TOMPKINS and JOHNSTON, JJ., concur.

Order denying petition for an order of certiorari to review the action of the Commissioners of the Division of Parole of the Executive Department in revoking the parole of Lewis Hogan and review the record and general cause of his detention, affirmed.