J. Irwin Shapiro, J.
Petitioner is now a prisoner in the Great Meadow Correctional Institution, maintained by the respondent, State Department of Correction, at Comstock, New York.
He brings this “ Proceeding against a body or officer ” (Civ. Prac. Act, art. 78), the respondents, State Board of Parole and State Department of Correction, upon the theory that they have *1051 illegally determined that two sentences imposed upon him, both to the Elmira Reception Center, ran consecutively and not concurrently.
Upon his plea of guilty of the crime of attempted extortion as a misdemeanor, petitioner was sentenced on September 2, 1954, by the Court of Special Sessions, Queens County (Culkih, J.), to Elmira Reception Center (for an indeterminate term) for classification and confinement pursuant to the Correction Law (art. 3-A). Subsequently, on May 18,1955, following his conviction by jury of the crimes of assault, second degree, with intent to commit sodomy; robbery, first degree; grand larceny, first degree; assault, second degree; and assault, third degree, petitioner was sentenced in the Queens County Court (Wiltse, J.), to Elmira Reception Center (for an indeterminate term), pursuant to article 3-A of the Correction Law. Under the applicable statutes (Penal Law, § 2184-a; Correction Law, § 288), the State Board of Parole could not impose a sentence in excess of three years for the misdemeanor and in excess of five years for the felony.
The felony conviction in the County Court and the misdemeanor conviction in Special Sessions were totally unrelated. In fact, the crimes involved were committed some 16 months apart.
Following petitioner’s classification by the Department of Correction, and certification of confinement in Elmira Reformatory, the Elmira Reception Center made inquiry of the Queens County Court as to whether the May 18, 1955 felony sentence was to run concurrently or consecutively to the misdemeanor sentence rendered in the Court of Special Sessions, Queens County. The Queens County Court Clerk informed the reception center that no reference had been made in the sentence of that court to the prior misdemeanor conviction. The statement of the County Clerk was completely accurate for Judge Wiltse, in imposing sentence, said:
“ the court : Now, that was as to Brayne (who had just been similarly sentenced).
‘ ‘ As to Mr. Browne, the judgment of the court is that you be sentenced under each count of the indictment under which you stand convicted, to confinement in an institution under the jurisdiction of the Department of Correction of the State of New York for an indefinite term, and you are sentenced to such institution as the Department of Correction may provide and you are committed to the Reception Center of the State of New York at Elmira, New York, for classification and confinement, pursuant to Article 3-A of the Correction Law *1052 and in your case also, the sentences are to run concurrently and not consecutively.”
On December 11,1957, petitioner was paroled, and on September 26, 1959 was rearrested and committed to Elmira Reformatory for violation of parole. The felony and misdemeanor sentences were treated as running consecutively — for a total and aggregate incarceration of eight years — and on this basis, following his apprehension as a parole violator, petitioner’s maximum expiration date on the second sentence was adjusted to February 1, 1963.
Petitioner now contends that due to the absence in the County Court sentence of any reference to the misdemeanor sentence, the two sentences must be construed as running concurrently rather than consecutively. It is agreed that if petitioner’s contention is correct the final expiration date of his sentence would be on or about October 18, I960, less any possible credit for jail time.
By notice of cross motion respondents moved to dismiss the petition for legal insufficiency in point of law before answer, pursuant to the provisions of the Civil Practice Act (§ 1293) “ on the ground that it does not state facts sufficient to entitle petitioner to the relief prayed for, or any part thereof, or to any relief, and on the contrary, reveals on its face (1) that no determination,, action or inaction on the part of any of the respondents are involved, and that said respondents have been improperly made parties to this proceeding; (2) that in view of the foregoing, if any relief is called for,«Article 78 of the Civil Practice Act is not the proper vehicle for obtaining same; (3) that the alleged determinations sought to be reviewed were not made in Queens County, and this proceeding has not been properly instituted therein.”
Although section 1293 of the Civil Practice Act provides that ‘ ‘ In the event of the denial of such application [to dismiss in point of law], the court may permit the respondent to answer ’ ’ both sides on the argument agreed that there are no factual issues for determination, and that the court could make a final order here without any further pleadings or proceedings.
Before the basic merits of the application may be considered, certain threshold objections of the respondents must be first considered.
(1) The respondents contend “ that the alleged determinations sought to be reviewed were not made in Queens County, and this proceeding has not been properly instituted therein. ’ ’
Section 1287 of article 78 of the Civil Practice Act (“ Where proceeding to be brought”), upon which the respondents rely *1053 for their contention, so far as here material, reads: 6 ‘ The petitioner shall apply for relief at a special term of the supreme court held within the judicial district embracing the county wherein the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or wherein the proceedings are brought or taken in the course of which the matter sought to be restrained originated, as the case may be, or wherein it is alleged in the petition that the material facts otherwise took place; or wherein the principal office of the respondent is located. ’ ’
It is thus apparent from the terms of the statute that petitioner may apply “ for relief at a special term of the supreme court held within the judicial district embracing the county wherein * * * it is alleged in the petition that the material facts otherwise took place.”
Respondents say that that “ would not be Queens County ” because “ The determination sought to be reviewed — that the sentences are to run consecutively — was made and is being-enforced by the Department of Correction and the Board of Parole” and since “The principal offices of the respondents are not in Queens County, their determination was not made in Queens County, nor is it sought to be enforced in Queens County.”
The court refuses to so narrowly interpret the statute. (Matter of Daley v. Board of Estimate, 258 App. Div. 165; Matter of Moors v. Craig, 205 App. Div. 897; Matter of Lacqua v. O’Connell, 280 App. Div. 31; Rochester Co-op. Milk Producers Bargaining Agency v. Du Mond, 185 Misc. 522.) The “ material facts ” upon which the respondents made the determination were the two. sentences imposed upon the petitioner. Those sentences took, place in Queens County, Avherein this application is brought.
In Matter of Daley (supra, p. 166), the facts Avere that, “ The decedent was employed, and the accident upon which the claim was based occurred, in Queens county. The proceeding Avas commenced in that county. Appellants claim that the proceeding is maintainable only in a county embraced within the judicial district wherein the public body or officer performed the act complained of. In this case the determinations which the court is asked to review were made in New York county, and if appellants ’ contention is correct the proceeding may not be prosecuted outside the First Judicial District.” The court there said (p. 166): “ The question depends entirely upon the interpretation of that portion of section 1287 of the Civil Practice Act which provides that the proceeding may be brought ‘ within the *1054 judicial district embracing the county * * * wherein it is alleged in the petition that the material facts otherwise took place.’ The meaning of the latter clause cannot be regarded as an open question in this court. Similar language was contained in the former section 1334 of the Civil Practice Act, which governed the venue of mandamus proceedings before the enactment of article 78 of the Civil Practice Act. In Matter of Moors v. Craig (205 App. Div. 897) we held that the language of the statute authorized the commencement of the proceeding in the county wherein occurred the underlying events which gave rise to the official action complained of. Under the authority of that case the respondent was entitled to institute the present proceeding in Queens county.”
Thus, the petitioner has a right under the statute to bring this proceeding in Queens County, a county ‘ ‘ within the judicial district * * * wherein it is alleged in the petition that the material facts otherwise took place.” The respondents’ contention with respect to the impropriety of the venue of this proceeding is, therefore, overruled.
(2) The respondents next contend, citing Matter of Hines v. State Bd. of Parole (293 N. Y. 254) that ” In any event, Article 78 is an improper vehicle to review the determination at bar.” Presumably, although the respondents do not say so, their contention is that the only way that the petitioner can try out the propriety of his incarceration, based upon the respondents ’ determination that the two sentences imposed upon him run consecutively and not concurrently, is by the institution of a habeas corpus proceeding.
Neither Matter of Hines (supra) nor the dictates of common justice necessitate such a conclusion.
In Hines, the petitioner instituted an article 78 proceeding to review the action of the State Board of Parole in denying him his release from State prison on parole and for an order that said board certify him for parole. In affirming a dismissal of his petition, the Court of Appeals said (pp. 257, 258):
“ A comprehensive system of parole has been established by the State and is found in the Correction Law. In section 210 thereof the Board of Parole is charged with' the duty of determining ‘ what prisoners serving an indeterminate sentence in state prisons and the Elmira Reformatory, may be released on parole and when and under what conditions.’ Under the same section the members of the Board are required personally to study the prisoners confined in the prisons of the State under indeterminate sentences, so as to determine their ultimate fitness to be paroled. Under section 212 it is provided that the time *1055 of the release of a prisoner ‘ shall be discretionary with the board of parole, but no such person shall be released until he has served such minimum sentence nor until he shall have served one year. The action of the board of parole in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law.’ The statutes declare that the action of the Board in releasing or refusing to release prisoners shall not be reviewable if in accordance with latv. Thus so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts. In this case there was no departure from any statutory requirement and lue may not review its action or failure to act.” * & *
‘ ‘ The only question presented, therefore, is one of discretion since there has been no failure to comply with statutory requirements. Matters of discretion affecting parole from State prisons and Elmira Reformatory have not been confided to the courts.” (Emphasis supplied.)
Thus, the petition in the Hines case was dismissed because it sought a court review of a discretion resident in and exercised by the Board of Parole in denying petitioner a release on parole. That discretion was exercised by the board without any departure by it “ from any statutory requirement. ’ ’ Here the contention is that the Board of Parole and the State Department of Correction will improperly detain the petitioner— after the sentences imposed upon him will have fully expired■ — -because they have, as a matter of law, and not in the exercise of any discretion vested in them, improperly determined that the five-year felony sentence only began to run upon the termination of the three-year misdemeanor sentence. Thus, a question of law alone is involved. Under such circumstances, this court not only has the power but the obligation and duty to review the actions of the respondents.
While the court has found no cases in which a petitioner on facts like ours was given relief in an article 78 proceeding, there have been a number of such cases in which relief was denied — based upon the factual situations there present — but the fact that the proceeding was an article 78 proceeding and not a petition for a writ of habeas corpus was not considered germane. (Matter of Sperling v. Moran, 277 App. Div. 778 [2nd Dept. 1950], motion for leave to appeal denied 301 N. Y. 816; Matter of Perillo v. New York State Bd. of Parole, 4 A D 2d 355, affd. 4 N Y 2d 1013; Matter of Bernoff v. Amoroso, 188 Misc. 845, affd. 271 App. Div, 925.)
*1056 In those cases the petitions under article 78 of the Civil Practice Act were considered on their merits and were denied on their merits and not because of any inability to maintain such a proceeding.
In Sperling (supra), the court considered the petitioner’s article 78 proceeding to amend the jail records by crediting him with 421 days jail time, but rejected his application — not because the proceeding was not maintainable as an article 78 proceeding — but because on the merits he was not entitled to credit for the time he sought.
The court, therefore, does not agree with the respondents’ expressed contention that an article 78 proceeding is not maintainable under the facts and circumstances here present, nor with their implied contention that the petitioner’s only relief is by a writ of habeas corpus.
To relegate the petitioner to suing out a writ of habeas corpus would mean that he could not maintain such a proceeding until after he had served the time concededly due from him to the State. (People ex rel. Coates v. O’Hara, 21 Misc 2d 415; People ex rel. Devoe v. Kelly, 97 N. Y. 212; People ex rel. Fishweicher v. Snyder, 183 Misc. 549; People v. Romano, 5 Misc 2d 171.) Thus, if it were held in such a proceeding that the sentences really ran concurrently and not consecutively, the petitioner would have been improperly and illegally confined as a prisoner after his term had in fact expired.
That the petitioner, a convicted attempted sodomist, robber, grand larcenist, assaulter and extortionist, cannot evoke any sympathetic response to his plea should be self-evident, but he comes to this court asking for what he contends is legally his due, and that he is entitled to get no matter how black his record is.
In effect, what the petitioner is here seeking-is to have the respondents correct their records by making a proper clerical entry therein, showing the proper final expiration date of his sentences instead of what he contends is the incorrect clerical entry now therein contained. If the respondents- have in fact entered the wrong final date of discharge on their records by reason of their misinterpretation of the effect of the second sentence, this court is not powerless to compel them to comply with the duty imposed upon them by law to properly note upon their records the legal effect of the sentences imposed by the two courts and the ultimate final date of discharge permitted by such sentences. No question of discretion is here involved. It is purely and simply a matter of legal interpretation of whether the second sentence ran concurrently or consecutively with the first sentence. The court, therefore, concludes that an article *1057 78 proceeding does lie under the circumstances of this case and the respondents’ contention in that regard is overruled.
(3) Although not mentioned in their memorandum of law, the respondents in their notice of motion to dismiss, assert “ that no determination, action or inaction on the part of any of the respondents are involved, and that said respondents have been improperly made parties to this proceeding. ’ ’ There is no merit to this contention.
As we have noted above, there has been positive action on the part of the respondents. They have affirmatively determined the ultimate date of discharge or release of the petitioner, and they have embodied that determination in the entries made by them in their records. Those would be sufficient reasons for their having been made respondents here. There are still others.
Petitioner, who was over 16 and under 19 upon both sentences (though he could have been under 21 upon the second sentence on May 18,1955 — Penal Law, § 2184-a, amd. by L. 1954, ch. 803, eff. Feb. 1,1955 and L. 1945, ch. 554, adding Correction Law, art. 3-A), could only be committed to the center, by command of the Penal Law (§ 2184-a) “ for classification and transfer ” as provided by Correction Law (art. 3-A). The center is under the jurisdiction of the respondent Department of Correction (§ 2184-a), which, through its Commissioner, upon the certificate of the “ classification board ” at the center recommending the institution best suited for the prisoner, ‘ ‘ shall determine ’ ’ the actual institution and “ direct his transfer there ” (Correction Law, §§ 62, 63). He could only be committed to the center upon the first sentence; and again only to the center upon the second sentence, because he had not yet been classified and transferred to the reformatory (Correction Law, § 61, subds. 1, 2).
Where, as here, the ‘1 punishment is not determined by the court” the “term of imprisonment of a person committed to the reception center shall be terminated by the [State] board of parole” (Correction Law, § 61, subd. 2), which board by the Correction Law (§ 280) is constituted “ the board of parole of Elmira reformatory * * * and Great Meadow correctional institution ’ ’.
The “term of imprisonment” of a youth [16 to 19 before Feb. 1, 1955, and 16 to 21 since then], “ shall be known as a reformatory term, and [aside from the board’s power to permit release on parole — Correction Law, § 288, with which we are now here concerned], shall be terminated by the board of parole ’ ’ and, as we e have heretofore indicated, 1‘ shall not exceed ” three years for a misdemeanor, the first crime at bar, and five years for a felony, the second crime (Penal Law, § 2184-a; Correction Law, § 288).
*1058 The duty and responsibility of the respondent, State Department of Correction is, among other things, to detain an inmate in accordance with the determination of the respondent, State Board of Parole. That power and responsibility to determine and detain is exclusive with the respondents. If, as the Attorney-General apparently contends, respondents have nothing to do with the transferring, remanding and holding of petitioner, then the logical question would be, who has ? Certainly, it is not the Warden of the prison or his subordinates, for they merely carry out the orders of the respondents. The undeniable fact is, as the respondents state in another connection in their memorandum that “ The determination sought to be reviewed — that the- sentences are to run consecutively- — -was made and is being enforced by the Department of Correction and the Board of Parole.” Since they are, therefore, not only proper but necessary parties to this proceeding, the objection in that regard is overruled.
The preliminary objections of the Attorney-General on behalf of the respondents having been considered and overruled, we now perforce come to the consideration of the merits of the petitioner’s position.
In short, his contention is that when Judge Wilts® sentenced him on the felony charge and did not say whether that sentence was to run consecutively or concurrently with the misdemeanor sentence imposed upon him prior thereto, that, as a matter of law, the second sentence began to run concurrently with the first sentence. The Parole Board having fixed his punishment on the misdemeanor at the maximum of three years and on the felony at the maximum of five years, it is petitioner’s contention that during the first three years of his incarceration he was serving time both on the misdemeanor sentence and on the felony sentence, and that after the expiration of the three-year period he only owed the State a maximum of two more years to complete the five-year felony sentence.
The respondents, on the other hand, contend that the prison time on the felony sentence only began to run after the expiration of the time served by him on the misdemeanor sentence.
The respondents in support of their contention that the sentences in this case did not run concurrently say, 11 Any so-called presumption of concurrence is a myth — perpetuated by careless application of outmoded generalizations and totally bereft of support in New York Law”, and that “ petitioner has relied entirely upon dictum and unfounded implication in an attempt to foist upon this Court a so-called. ‘ presumption of concurrence ’.”
*1059 Let us see whether that is so. In People v. Ingber (248 N. Y. 302), the Court of Appeals determined that section 2190 of the Penal Law, which provides for cumulative rather than concurrent sentences under the specific facts therein set forth, does not affect sentences in fields not covered by that statute. The court said (pp. 305, 307):
‘1 The statute prescribes an automatic rule in certain typical situations that seemed to call for special treatment. Almost invariably a prisoner brought up to be sentenced at the same time for two or more offenses is one who has been tried for the two offenses at the same term of court and before the same judge (People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 575). Even before the statute, the common practice in such cases was to make the terms of imprisonment successive. Sometimes, however, the judge omitted through inadvertence to give that direction in the judgment (cf. People ex rel. Meininger v. Breuer. 304 Mo. 381, at p. 405). The presumption then was that the terms were meant to be concurrent (Kirkman v. McClaughry, 152 Fed. Rep. 255; Zerbst v. Lyman, 255 Fed. Rep. 609; Dickerson v. Perkins, 182 Ia. 871). The aim of the statute, which goes back to the Revised Statutes (2 R. S. 700, § 11), was to make the inadvertence unimportant by prescribing a rule of succession irrespective of the form of judgment. This is made clear by the revisers’ notes, where they say of the section: ‘ New in form; generally declared in the sentence; but as it may be omitted, it is deemed useful to provide for it by law.’ A like mandatory rule was thought to be desirable where a convict while imprisoned under a sentence for one felony was thereafter guilty of another. These cases have been singled out and subjected to a rule whereby discretion is excluded. The statute is not in any true sense a direction to the judge as to the form or contents of the sentence. It is a direction to the jailer as to the term of the imprisonment. Though the sentence be silent, the statute gives the rule. * * *
“ It is one thing to say that the kind and measure of the punishment to be inflicted shall be governed by the statute. It is another thing to say that there shall be a rejection of common-law tests in determining the form of sentence whereby the mandate of the statute may best be put into effect. If Penal Law section 2190 had never been enacted, the question would remain. When the statute imposes the punishment of imprisonment for each of two crimes, are the terms of imprisonment to be successive or concurrentf The statute answers that question in some situations, and omits to answer it in others. The courts *1060 must fill the gap. [Emphasis supplied.] A grant of power to sentence for a stated term without other limitation is to be read as a like grant of power would be read at common law (cf. People ex rel. Forsyth v. Court of Sessions, 141 N. Y. 288).
“ Our holding that section 2190, Penal Law, does not affect the form of sentence in fields uncovered by its mandate, has support in carefully considered judgments in other jurisdictions.”
Thus, in Ingber {supra) the Court of Appeals recognized that when a sentencing court omitted, either by design or inadvertently, to give a direction in his judgment that the sentence then being imposed was to be cumulative and not concurrent ‘ ‘ the presumption then was that the terms were meant to be concurrent ”. It is also clear from that case that in all cases left uncovered by the statute there is “ no token of a purpose to curtail discretionary power ” in the imposition of sentences.
In People ex rel. Winelander v. Denno (9 A D 2d 898 [2d Dept.]), the question was whether a sentence imposed in the County Court of Queens County upon the petitioner was to run concurrently with a sentence imposed upon him prior thereto in the United States District Court, Eastern District of New York. Although holding that the sentences in that case were not to run concurrently but were cumulative, the Appellate Division unanimously agreed that there is a “ common-law presumption that two sentences, imposed by one court or by different courts of the same jurisdiction or sovereignty, are concurrent, in the absence of a direction to the contrary by the second sentencing judge ”.
In People ex rel. Gerbino v. Ashworth (267 App. Div. 579), the relator had been sentenced to the Workhouse for 30 days on a book-making charge. On a subsequent conviction for the same kind of offense, the City Magistrate indorsed his sentence on the back of the information but did not indicate whether that sentence should be concurrent with or consecutive to the first sentence. After the prisoner had begun to serve his term, the officer of the Department of Correction, having custody of the relator, took the papers to the Magistrate who added thereon the direction that his sentence should commence at the completion of the first sentence.
In reversing Special Term and sustaining the application for a writ of habeas corpus, the court said (p. 581): “ When the court imposed the sentence in the presence of the defendant and his attorney, the court knew that the relator was confined in the workhouse under a sentence imposed by the Court of Special Sessions. . At the time of the imposition of sentence there was no direction that the terms were to be consecutive. The law is *1061 well settled that a sentence pronounced must state that the terms are to he consecutive or the presumption is that the terms are to he concurrent. (People v. Ingher, 248 N. Y. 302.) There are statutory exceptions to this rule but they have no application to this case.” (Emphasis supplied.)
That case is a direct authority in favor of the petitioner on the issue now before the court.
Whatever the merits may originally have been on the question of whether a second sentence was to be concurrent or consecutive with a first sentence when the former was silent as to when it was to begin, it is now too late, in view of the authorities, to consider the matter de novo.
In the face of a unanimous determination by the Appellate Division, First Department, that “ The law is well settled that a sentence pronounced must state, that the terms are to be consecutive or the presumption is that the terms are to be concurrent ” (Gerbino v. Ashworth, supra, p. 581), and that there is a ‘ ‘ common-law presumption that two sentences, imposed by one court or by different courts of the same jurisdiction or sovereignty, are concurrent, in the absence of a direction to the contrary by the second sentencing judge ’ ’ (People ex rel. Winelander v. Denno, supra, p. 898), it is not, as the Attorney-General contends, the petitioner who is seeking ‘ ‘ to foist upon this court a so-called presumption of concurrence ’ but the weight of the authorities on the subject that compel the legal conclusion that there was here a concurrence of the second sentence with that first imposed.
Perhaps some of the difficulty in considering this subject is occasioned by the use of the word “ presumption ” to support the conclusion that if nothing is said upon the imposition of the second sentence it automatically runs concurrently with the first. Despite the continued use of the word “ presumption ” by the courts, it is not a presumption in the true sense, for if it were it would be subject to rebuttal and refutation and the opposing party could call for a hearing to take testimony from the sentencing official as to what he really intended. That, however, may not be done for — once the sentence is begun — it may not, unless illegal or otherwise improper, be changed. (Penal Law, § 2188; Matter of Cedar, 240 App. Div. 182, 186; People v. Meshel, 245 App. Div. 673; People ex rel. Smith v. Johnston, 11 A D 2d 834.) Thus, the unexpressed intention of the sentencing judge is wholly immaterial.' It is what he did affirmatively say or fail to say, upon the imposition of the sentence, that is determinative. The fact of the matter is that the underlying basis for the holding that a second sentence runs concurrently with the first sentence, under such circumstances as are here present, *1062 is that when a sentence is imposed it is intended to start being served forthwith upon the delivery of the person of the prisoner to the custodial authorities. Thus, it ordinarily begins to run almost immediately after its imposition. By thus beginning to run, it necessarily runs concurrently with any prior existing sentence. We are dealing, therefore, not with a presumption but with an irresistible conclusion of law based upon the legal requirement that a sentence imposed upon a defendant begins at once unless the contrary is affirmatively indicated.
The respondents’ records in this case, which now show that the maximum expiration date of the sentences imposed upon the petitioner are two years and four months later than they would be if the sentences were properly recorded as running concurrently, do not speak the legal truth. They should be corrected so to speak.
Petitioner’s application is in all respects granted.