W. Vincent Grady, J.
Petitioner was released on parole on February 16, 1970. One of the alleged conditions of his parole *364 was that he abstain totally from the use of alcohol, which condition is the one under attack here. On October 6, 1970, when petitioner reported to his parole officer, he was informed that he was under arrest because he appeared to be intoxicated and was brought to the Nassau Comity Jail.
On November 10, 1970, petitioner was returned as a parole violator. On December 9, 1970, he appeared at a revocation hearing before the Parole Board without counsel and the decision was that he be held for a minimum of 18 months. Subsequently, on July 29, 1971, a new parole revocation hearing was held pursuant to the decision and order of Mr. Justice Hawkins dated July 26, 1971, and the Parole Board affirmed its prior decision of December 9, 1970, revoking petitioner’s parole. It is the July 29, 1971 decision which is before this court for review.
No reasons are set forth in the decision revoking petitioner’s parole. The court surmises that one of the bases for the decision of the Parole Board is the charge that petitioner had a couple of drinks on one occasion in September, 1970, and that he consumed alcoholic beverages on October 6, 1970, which resulted in his arrest for intoxication. Petitioner’s testimony at the hearing brought about these claims: Petitioner’s parole officer knew that petitioner had a couple of drinks in September, 1970, but no action was taken against him. On October 6, 1970, petitioner went to a dermatologist who was treating him for very badly infected feet and gave him medication for his pain. On that same evening he went to his parole officer who charged him with being intoxicated.
Special Condition Buie 5 dictates that the parolee avoid the excessive use of alcoholic beverages and if directed by the parole officer to abstain totally. Petitioner’s testimony reveals that petitioner’s parole officer knew that he had a few drinks in September, 1970 and did not direct him to abstain. The alleged intoxication on October 6, 1970, is contradicted by the report of the doctor who was treating petitioner for a fungus infection. Petitioner contends that Special Condition Buie 5 of the rules governing parole promulgated by the State of New York, Division of Parole, pursuant to the authority of section 215 of the Correction Law is unconstitutional as applied to him and that the Parole Board’s decision revoking his parole was arbitrary and capricious.
Besearch does not disclose any New York decision dealing with 'Special Condition Buie 5 pertaining to excessive use or complete abstinence from alcoholic beverages as a condition of *365 parole. In the most recent issue of the Albany Law Review (Vol. 36, No. 2, 1972) there appears an article by Donald J. Newman, Professor of Criminal Justice of the State University of New York at Albany: “ Court Intervention in the Parole Process ”. Part of this article deals with conditions of parole and Professor Newman cites a study of parole rules (Arluke, A Summary of Parole Rules — Thirteen Years Later, 15 Crime and Delinquency 267 [1969]). In this study, it appears that while no single rule is common to all jurisdictions, there are more or less standard terms and conditions in most jurisdictions. One of the common conditions is that the parolee abstain from liquor or use it in moderation. Professor Newman’s research apparently discloses that the legal challenges of conditions of parole are not directed to those common standard requirements that the offender remain law abiding, sober or keep his whereabouts known. Most litigation is directed to other special conditions which are attached to a particular prisoner or class of prisoners.
Professor Newman’s article does not cite any New York case concerning the constitutionality of Special Condition Rule 5 but discusses a Federal court and an Idaho decision dealing with a probation condition refraining from the immoderate use of alcohol (Sweeney v. United States, 353 F. 2d 10 and State v. Oyler, 92 Idaho 43). The petitioners in those cases found it impossible to comply with the condition because of the history of chronic alcoholism whereas here petitioner although having an alcoholic problem never contended that it was impossible for him to comply by reason of his chronic alcoholism. Although the courts in the Sweeney and Oyler cases found the probation condition of refraining from immoderate use of alcohol improper, they did not declare that such condition was violative of constitutional protections.
The court does not rest its decision herein on the constitutional attack against rule 5 but reaches its determination on the other ground urged by petitioner that respondent’s decision was arbitrary and capricious. In Alverez v. Turner (422 F. 2d 214) the Tenth Circuit Court of Appeals concluded that the fact that a parolee was not entitled to the specifics of due process available to an accused in the first instance did not negate the rights of a parolee to enjoy due process as that mandate reflects the right of all persons to inherent fairness in all compulsive processes. The court stated: “ The right of a prisoner to be heard at a revocation hearing is inviolative; so, too, is the right to know and be specifically informed of the *366 charges and the nature of the evidence against him; and, finally, the right to be free from pure caprice on the part of the discretionary authority before whom the proceedings occur.” (422 F. 2d, at p. 220).
In upholding a parolee’s rights to counsel at a parole revocation hearing, Judge From speaking for the majority of the Court of Appeals in People ex rel. Menechino v. Warden (27 N Y 2d 376), recognized the difficulty of anticipating questions that may arise to confront the Board of Parole and the courts. Professor Newman in his article “ Court Intervention in the Parole Process ” discusses the careful attitude of the courts in avoiding to spell out all of the specific requirements of due process in revocation proceedings and concludes that the general nature of the proceedings as well as the grounds for the final decision is generally assumed to rest squarely within the discretion of parole authorities. Judge Bbeitel in his dissenting opinion in the Menechino case recognized the practical problems that would have to be worked out in connection with the parole revocation hearings with counsel and set forth this query as to the evidence at such hearing*: ‘ ‘ What will be the standard of proof for the board to revoke parole: reasonable ground, substantiality of evidence, preponderance of the evidence, some sort of equivalent of proof beyond a reasonable doubt? ” (27 N Y 2d, at pp. 394, 395.)
This court in reviewing the record of the parole revocation hearing has no definite standard set down by the courts or the Legislature to follow with respect to whether the evidence at the hearing was sufficient to sustain the board’s decision revoking parole. In Matter of Hines v. State Bd. of Parole (293 N. Y. 254) the Court of Appeals held that the discretion of the Parole Board is absolute and beyond review in the courts as long as it does not violate any positive statutory requirement in connection with parole release decisions. It is clear that the Court of Appeals has made a distinction between parole revocation hearings and parole release hearings in that the latter involves no constitutional right to counsel (Matter of Briguglio v. New York State Bd. of Parole, 24 N Y 2d 21) whereas the former requires the presence of counsel (Menechino, supra). Such a distinction would indicate that the discretion of the Parole Board at parole revocation hearings is not absolute and beyond review in the courts as the Court of Appeals held in the Hines case. It is true that under section 212 (subd. 10) of the Correction Law, any action taken by the Parole Board *367 shall be deemed a judicial function and not reviewable if done in accordance with law. People ex rel. Smith v. Deegan (32 A D 2d 940) held that the Parole Board’s determination of parole revocation was not subject to judicial review. However, section 212 (subd. 10) of the Correction Law was adopted and the Smith case was decided prior to Men¡echino and there is implicit in the observation made at the conclusion of Judge Fuld’s opinion a caveat that parole revocation hearings be sensitive to the demands of due process: “In bringing this opinion to a close, we note our agreement with observation, frequently made, that the parole system is an enlightened effort on the part of society to rehabilitate convicted criminals. Although few circumstances could better further that purpose than a belief on the part of such offenders in a fair and objective parole procedure, hardly anything could more seriously impede progress toward that important goal than a belief on their part that the law’s machinery is arbitrary, too busy or impervious to the facts. The desired end can become a reality only by requiring obedience to the demands of due process and granting parolees a hearing at which they will be represented by counsel.” (27 N Y 2d, at pp. 385-386).
Due process is not served if a parolee is entitled to counsel at a parole revocation hearing but is not entitled to a judicial review of the Parole Board’s decision. A revocation hearing is: “an accusatory proceeding in which the outcome — liberty or imprisonment — is dependent upon the board’s factual determination as to the truth of specific allegations of misconduct.” (People ex rel. Menechino v. Warden, at p. 382.)
The court concludes in view of Menechino, that the decision of the Parole Board is subject to judicial review.
Professor Newman makes the following pertinent comments: “ d) Share decision basis with the prisoner or parolee. Because the law has not traditionally required parole authorities to account to the person affected for their decisions to deny or grant parole, to set conditions, or to order revocation, many agencies have not done so. While there is something to be said for the general principle that the less said about the basis of a decision the less chance there is for reversal on review, general principles of fairness and notice as well as conformity with the rehabilitative objective of parole, would indicate that revealing the basis for decisions is an important part of the appearance of fairness, as necessary to the agency as inherent fairness. Furthermore, the sharing of rationale is not as likely to result in reversal as is silence. The fact is that most parole *368 decisions, from denial of release to revocation, rest on clear and appropriate criteria. Silence about these to the persons involved and perhaps even to the appellate court, gives an appearance of capriciousness that is normally not the case. Just as the medical model of not sharing diagnoses with patients is breaking down (even in psychiatry), it would seem both appropriate and a possible contribution to the growth of professional parole practices to share as frankly as possible reasons for critical decisions on the part of parole board members and field agents alike ” (36 Albany L. Rev., at pp, 299-300).
Section 215 of the Correction Law gives the Parole Board power to adopt general rules with regard to conditions of parole and their violation. Three members of the board may make special rules to govern in particular cases. The Parole Board rests its case on the legislative delegation of discretion and to the extent that discretionary expertise is claimed by the board, it should be willing to articulate sound criteria for its decisions (See Newman, Court Intervention in the Parole Process, 36 Albany L. Rev., p. 301).
In People ex rel. Maggio v. Casscles (28 N Y 2d 415) the Court of Appeals stated its- concern with the testing of the integrity of the fact-finding process at the parole revocation hearing: “If the parole hearing record clearly demonstrates compliance with due process requirements, a new hearing should not be ordered. The conviction of another crime or an admitted and unexplained substantial violation of the conditions of parole is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary. Similarly, if it appears that the violation was fully established and/or the explanation was false, the accuracy of the factual determination is unimpaired. On the other hand, unexplained technical violations in inadequately developed contested cases require remedial action. ” (28 N Y 2d 418).
Petitioner was charged with a technical violation and upon the record of the July 29, 1971 parole revocation hearing, the only apparent basis for the board’s decision is petitioner’s use of alcoholic beverages. Petitioner’s drinking in and of itself and under the circumstances present in this case does not warrant parole revocation and a return to prison for 18 months. It is the absence of any reasons in the Parole Board’s decision that leads the court to the conclusion that the decision is arbitrary and capricious.
Accordingly, the petition is granted. Petitioner shall be released from present custody.