John O. Mabbach, J.
This is an article 78 proceeding seeking to annul respondent’s determination which revoked petitioner’s conditional release and held him to his maximum expiration date.
The factual setting giving rise to this application begins with a judgment of the Supreme Court, New York County, dated March 11, 1971, whereby petitioner was sentenced to_ an indeterminate term of imprisonment with a maximum of four years, upon a conviction of attempted sexual abuse. A maximum expiration date of October 16, 1973, was established. On June 16, 1972, petitioner was discharged on conditional release.*
• Upon his discharge from the Ossining Correctional Facility at 9:15 a.m. on June 16, 1972, petitioner was ordered to proceed to the New York City parole office to make his initial report. Petitioner arrived there at approximately 12:20 p.m. and was interviewed by Parole Officer Bove in the absence of petitioner’s assigned parole officer, a Mr. Barling. On the basis of the interview, Officer Bove obtained a parole warrant and petitioner was detained for violation of his conditional release. On July 7,1972, following an interview with petitioner at the Ossining Correctional Facility on June 29, 1972, Officer Barling prepared a report of violation of parole containing three charges: 1. On 6-16-72, the subject used an alcoholic *291 beverage to excess and was admittedly intoxicated. 2. The subject, during his initial interview on 6-16-72 stated that he would refuse to abide by the rules governing parole except that he would make his scheduled office reports. 3. On 6-16-72 this subject constituted a menace to himself and to other persons in the community.
The violation report also states that petitioner, on June 16, 1972, was “ belligerent ” and “ verbally abusive ” to the parole officers who attempted to speak with him; that a half full bottle of whiskey was confiscated from him and that the parolee had an extensive criminal record including charges of “ drunken disorderly and assault” with a history of mental illness.
On August 3,1972, a parole revocation hearing was conducted at which petitioner was represented by counsel. He denied the charges. Officers Barling and Bove testified and were cross-examined. Petitioner’s prior(record of crimes was read into the record. After reviewing the case, the respondent determined on August 4,1972, that petitioner should be held to serve the remainder of his maximum term.
The petition alleges that the violations of Charges 1 and 2 were so insignificant as to render the respondent’s determination arbitrary and capricious. It alleges as to Charge 3 that although serious enough to warrant revocation, there was not substantial evidence to support the determination. Petitioner’s argument on the intoxication charge proceeds upon a de minimis theory, admitting the intoxication but challenging the degree to which the inebriety had arisen (“ merely high ”) and claiming the joy of the first day of freedom mitigated against the harsh effect of the rearrest and its consequences. Concerning Charge 2, the argument contests the meaningful significance of this “boast” when in an intoxicated state and seeks to dismiss it as a “ misunderstanding ” by petitioner of his obligations. Charge 3 stands upon entirely different footing for in that regard it is argued that the finding of being a menace rests only upon the judgment of the parole officer who so testified and an inconclusive statement based upon petitioner’s file that there was a history of assault and violence.
Respondent urges that these claims are addressed to the purely discretionary function of the parole revocation board and that, although subdivision 3 of CPLR 7803 on its face would allow for review of an abuse of discretion, that cannot be permitted here without invading the sole province of the parole board. Moreover, respondent argues that a question of substantial evidence supporting the determination under sub *292 division 4 of CPLR 7803 can never be raised in this area. This latter argument, of course, will have an effect on whether referral to the Appellate Division is appropriate.
Petitioner does not raise any constitutional questions involving procedural due process under People ex rel. Menechino v. Warden (27 N Y 2d 376), or Morrissey v. Brewer (408 U. S. 471 [1972]). The petition is devoid of any claim that Morrissey standards {supra) were not met. The court treats any defects as waived. Nevertheless, the crux of his position is that petitioner is being illegally deprived of his freedom.
It has been held that the action of a parole board in declaring a parolee delinquent and directing that he be returned to prison to serve the remainder of his term is not reviewable in a proceeding pursuant to article 78 (People ex rel. Di Lorenzo v. Fay, 13 A D 2d 1034, mot. for lv. to app. den. 10 N Y 2d 707). In Matter of Mummiami v. New York State Bd. of Parole (5 AD 2d 923, mot. for lv. to app. den. 5 N Y 2d 709, rearg. den. 7 N Y 2d 756, cert. den. 362 U. S. 953), the court held that “in the absence of a showing of a violation of a statutory duty, the action of a [parole board] is not subject to review.”
In Matter of Browne v. New York State Bd. of Parole (25 Misc 2d 1050, affd. 12 A D 2d 800, revd. on other grounds 10 N Y 2d 116), the lower court held that article 78 could be used to review a determination revoking parole when the sole issue was whether the maximum term was properly computed by the parole board, a question of law. In a subsequent article 78 case (People ex rel. Weber v. Division of Parole of State of New York, 212 N. Y. S. 2d 761 [Sup. Ct., Westchester County], cert. den. 369 U. S. 890), Browne was. distinguished and the principle was reiterated that in the absence of a showing that the parole board violated any positive statutory- duty in revoking parole, the petition must be dismissed.
Traditionally, the writ of habeas corpus is most often utilized to test the legality of detention and imprisonment. It is an appropriate method to determine whether a parole revocation was lawfully effected. (People ex rel. Menechino v. Warden, 27 N Y 2d 376, 379; People ex rel. Combs v. La Vallee, 29 A D 2d 128, 132, app. dsmd. 22 N Y 2d 857; People ex rel. Warren v. Mancusi, 70 Misc 2d 90, 91; cf. People ex rel. Keitt v. McMann, 18 N Y 2d 257.) Thus, the issue is not one of ‘ ‘ right to review ” but rather “ scope of review”.
Respondent does not suggest, as was inferred by the court in Matter of Browne v. New York State Bd. of Parole (25 Misc 2d 1050, supra), that habeas corpus is the sole avenue available *293 to the parolee. Bather, respondent argues, that, if article 78 is utilized, the scope of review is limited to whether the determination was ‘ ‘ arbitrary and capricious ’ ’ in light of procedural due process standards.
Section 212 of the Correction Law governs the duties and powers of the board of parole with respect to ‘‘ parole and conditional release and the revocation thereof ” (subd. 1) and provides in subdivision 10 that 11 Any action taken by the board pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law.”
This legislative limitation upon review of parole revocation ' determinations was not part of former section 218 of the Correction Law. Through amendment in 1968 and repeal in 1970, the provisions in section 218 of the Correction Law were re-enacted in a revised section 212, which is the controlling statute in this proceeding. Section 212 of the Correction Law covers both the procedure for granting release on parole and its revocation. It was not until July 8, 1970, that the revocation procedure thereby became subject to the limitation on judicial review that had previously only applied to release upon parole, and even then it is only applicable to crimes committed after September 1, 1967.
This statutory history offers some insight into the problems that faced the courts under prior law. Thus, case law arising out of attempts to review denials of the right to release upon parole has always been clear-cut. It is a discretionary act not subject to review. (Matter of Hines v. State Bd. of Parole, 293 N. Y. 254; Matter of O’Connor v. State Bd. of Parole, 270 App. Div. 93; Matter of Briguglio v. New York State Bd. of Parole, 24 N Y 2d 21; People v. Pierre, 34 A D 2d 1000.)
On the other hand, in the absence of any equivalent provision limiting review of parole revocation hearings, classification of the nature of the revocation hearing was always necessary (cf. People ex rel. Smith v. Deegan, 32 A D 2d 940, 941). This presumes that the courts were willing to go beyond the statu-tory language (still present in section 212) characterizing the revocation hearing as only an opportunity to offer an explanation of the charges, and some courts were not so disposed (People ex rel. Ochs v. La Vallee, 33 A D 2d 80, 81). One early decision had gone so far as to conclude that by being given the opportunity to explain the charges to a revocation board, the parolee was “in a measure * * * protected against purely arbitrary action ” (emphasis added); but without a remedy if the determination was only “arbitrary”. *294 (Matter of Hogan v. Canavan, 245 App. Div. 391, 394 [1935]). However, although release upon parole and revocation of parole were two separate and distinct functions governed by different statutory provisions, the principles governing release as established in Matter of Hines v. State Bd. of Parole (293 N. Y. 254), were often relied upon in revocation cases to deny review.
The problem was magnified when the application was brought under article 78 of the former Civil Practice Act, because not only did the characterization of the nature of the proceeding affect the “ scope of review” (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.04), but also the “ right to review ” when the proceeding was classified as a discretionary administrative act (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.06, p. 78-61).
Under present subdivision 3 of CPLE 7803, this basis for denying review is no longer available (23 Carmody-Wait 2d,. New York Practice, p. 449; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.06). With this in mind and taking into effect the significant change in section 212 of the Correction Law, what scope of review is available? Moreover, inasmuch as present subdivision 10 of section 212 of the Correction Law declares the revocation proceeding to be a judicial function, is the parolee also entitled to the benefit of subdivision 4 of CPLE 7803 on the grounds that a statutory hearing was required and questions of substantial evidence may be raised which should be referred to the Appellate Division (CPLE 7804, subd. [g])?
Indeed, what is the meaning and effect of the review limitation in subdivision 10 of section 212 of the Correction Law, and these pertinent sections of article 78 in light of People ex rel. Menechino v. Warden (27 N Y 2d 376, supra); People ex rel. Maggio v. Casscles (28 N Y 2d 415), and most importantly, Morrissey v. Brewer (408 U. S. 471) ?
The limitation in subdivision 10 of section 212 of the Correction Law cannot be ignored or minimized. The rules of statutory construction must prevail so as to give this provision its intended meaning and effect so that it will serve some useful purpose, avoiding unreasonableness and most certainly unconstitutionality where that latter aspect can be at all avoided.
In construing the phrase “ if done in accordance with law ” in subdivision 10 of section 212 of the Correction Law the mandates of procedural due process enunciated in Morrissey v. Brewer (408 U. S. 471), and People ex rel. Menechino v. Warden (27 N Y 2d 376), are a paramount concern in according the *295 parole board’s procedure with the “law”. Errors of law of the type found in Matter of Browne v. New York State Bd. of Parole (25 Misc 2d 1050, supra), are also reviewable. And even though Matter of Hines v. State Bd. of Parole (293 N. Y. 254), and Matter of O’Connor v. State Bd. of Parole (270 App. Div. 93), have interpreted this phrase to mean that the parole board’s discretion is absolute and beyond review of the court in the absence of a failure to meet statutory requirements, that characterization must be tempered within due process requirements and the teaching of the Matter of Bd. of Educ. of City of N. Y. v. Allen (6 N Y 2d 127), that a statutory prohibition upon review does not preclude review of questions of arbitrariness or caprice.
In this framework, the court construes subdivision 10 of section 212 of the Correction Law as a protection against unwanted and unwarranted incursions by the courts into the discretionary realm of an independent board of parole, an area in which they have little, if any, expertise. The objective upon review is to segregate the discretionary aspect of the determination from the lawfulness of the procedure. In this context, respondent’s argument that arbitrariness or caprice can only be measured in terms of procedural due process is without merit.
The task is not easy. Some guidelines are available in the cases. The parole revocation proceeding must elicit a meaningful factual presentation (Morrissey v. Brewer, 408 U. S. 471; People ex rel. Menechino v. Warden, 27 N Y 2d 376, 382-383; People ex rel. Maggio v. Casscles, 28 N Y 2d 415, 418). In Morrissey (408 U. S. 471, 480), the court emphasized that: “This part of - the decision, [the revocation of parole] too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were” and also that (p. 488) “it [the revocation hearing] must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.”
Accordingly, where no evidence is presented by the parole board which has the burden of going forward in the face of a denial of the charges, a revocation cannot be sustained (People ex rel. Warren v. Mancusi, 70 Misc 2d 90, affd. 40 A D 2d 279; People ex rel. Van Burkett v. Montanye, 70 Misc 2d 907). Where the sole evidence is an unverified parole officer’s violation report, the procedure is equally defective (Matter of Perry v. New York State Bd. of Parole, Sup. Ct., Westchester County, Index No. 9567/72, Sept. 29, 1972, Rtjbehfbld, J.).
*296 However, once a court is satisfied that there has been meaningful factual presentation, the review must proceed with utmost caution. The revocation hearing is not a criminal proceeding. “It is a narrow inquiry [where] the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in .an adversary criminal trial.” (Morrissey v. Brewer, 408 U. S. 471, 488, supra.) It is predictive and discretionary and ‘ ‘ involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts.” (Morrissey v. Brewer, supra, p. 480.)
This language of Chief Justice Burger in Morrissey follows his own analysis as Circuit Judge in Hyser v. Reed (318 F. 2d 225, 240 [C. A., D. C., 1963], cert. den. sub nom. Jamison v. Chappell, 375 U. S. 957), where he stated: “Even more limited is judicial review of the Board’s judgment as to what it should do about the violation. Once the violation is established or admitted, the exercise of discretion in determining whether or not parole should be revoked, represents a very high form of expert regulatory and administrative judgment and the expert appraisal of the Parole Board in this area can be regarded as almost unreviewable.” (emphasis added). Just what particular facts will place a case in the pale beyond the “ almost unreviewable ” category cannot be anticipated. It would and should be the uncommon one to be sure.
However, the inquiry as to whether there has been a meaningful factual presentation as a guideline has shortcomings. By what standards should the evidence be tested, if at all, assuming that procedural due process requirements have been met? This query was first raised by Judge Breitel in his dissenting opinion in People ex rel. Menechino v. Warden (27 N Y 2d 376, 395). It has concerned lower courts since that decision (Arthurs v. Regan, 69 Misc 2d 363, 366; People ex rel. Warren v. Mancusi, 70 Misc 2d 90, 91-92, affd. 40 A D 2d 279).
In Warren, the Appellate Division, Fourth Department, considered the question of burden of proof and sought to lay this problem to rest. It concluded that the burden of proof concept is not adaptable to the nature of the parole revocation hearing process. The court held (p. 283), in language that implies the establishment of a standard, that ‘ ‘ The evidence and facts must satisfy it [the parole board] that a parole violation has occurred and that the violation warrants revocation of parole.”
In reaching this conclusion, the court was influenced, firstly, by the statement in Menechino (27 N Y 2d 376, 384) that “it *297 is the hoard alone which is to ascertain the facts and decide their ultimate importance ”; secondly, by recently adopted rules of the New York State Board of Parole which state that the violations must be sustained to the satisfaction of the revocation panel; and, thirdly, by the Supreme Court’s holding in Arciniega v. Freeman (404 U. S. 4), that satisfactory evidence is an acceptable standard. Under the Warren approach, the reviewing court is restricted to ascertaining whether the evidence was presented in such a manner that procedural due process was met but it is not to weigh the evidence under any formalized standard. In this court’s opinion, this approach unduly extends the independent function of the parole board and its right to exercise its discretion. Arciniega does not support this extension because, while the parole board was satisfied that a violation existed and the lower courts upheld the board’s determination, the Supreme Court reversed, stating that the evidence was not satisfactory and was not “ sufficient evidence ” of a violation of a parole condition not to associate with other ex-convicts. Therefore, what might be satisfactory to a parole board as evidence of a violation could very well not be recognized by a reviewing court even though all due process safeguards had been met. What might not be shocking to the parole board may very well be to a reviewing court, and therein the problem lies for there is no effective restraint upon a reviewing court by way of specific standards. This court concludes that Judge Breitel’s query remains unanswered but nevertheless relevant. Whether this status is salutary remains to be seen.
Turning to the question of substantial evidence supporting the revocation determination, all of the requirements under subdivision 4 of CPLR 7803 necessary to raise such an issue are met (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.07). Subdivision 10 of section 212 of the Correction Law characterizes the hearing as a judicial function, and Morrissey and Menechino have applied definite procedural due process requirements so that some sort of a record must be maintained and the board must render a statement setting forth the evidence relied upon and the reasons for revoking parole.
Respondent argues that the language of subdivision 7 of section 212 of the Correction Law does not provide for a statutory hearing. This contention ignores the mandates of controlling case law in favor of a simplistic interpretation of this subdivision, the status of which is highly questionable. Moreover, it has been suggested that in situations where there *298 is a constitutional right to a hearing, even though a statute does not require one, it would appear that evidence questions could be raised, particularly if the statute did not preclude a hearing but implied a right (1 N. Y. Jur., Administrative Law, § 178, p. 594).
The court does not perceive any conflict between subdivision 10 of section 212 of the Correction Law and the protection of the discretion vested in the parole board on the one hand, and a review of a determination on a substantial evidence basis on the other. In fact, habeas corpus proceedings have determined whether satisfactory evidence (Arciniega v. Freeman, 404 U. S. 4), or sufficient evidence (Williams v. Field, 301 F. Supp. 902 [D. C., Cal., 1969]) existed to support a determination ; an equivalent review. If available through habeas corpus, utilization of article 78 should not have a chilling effect. Indeed, similar review is warranted.
Nor is the case of Matter of Briguglio v. New Fork State Bd. of Parole (24 N Y 2d 21) controlling, for there the question was one of a right to release on parole. Although the inmate argued that the board’s determination was not supported by substantial evidence, the court refused to overrule Matter of Hines v. State Bd. of Parole (293 N. Y. 254) noting that parole release hearings do not involve constitutional due process.
The court concludes that a question of substantial evidence under subdivision 4 of CPLR 7803 may be raised to challenge a parole board’s determination revoking parole and that in a proper case the matter must be referred to the Appellate Division (CPLR 7804, subd. [g]).
With these considerations in mind and recognizing the thrust of the petition and the limited basis upon which it is founded, the court finds that the respondent’s determination was not arbitrary or capricious in regard to the alleged parole violations set forth in Charges 1 and 2 of the violation report. Petitioner’s reliance upon the result reached in Arthurs v. Regan (69 Misc 2d 363) is not persuasive. The facts are different for, here, there was an admission of intoxication and only a question of degree supported merely by argumentative conclusions. The burden in this application of showing that the revocation was arbitrary and capricious is upon the petitioner, who must support his allegations and arguments with facts (Williams v. Field, 301 F. Supp. 902, supra). The argument that the rearrest here results in a term of imprisonment far in excess of that available for a simple intoxication charge is completely misleading and utterly without merit. It is the original crime which *299 results in the maximum term. Any credence given to such an argument would permit the petitioner to reargue the merit of his original sentence, a device the Supreme Court in Morrissey stressed was not available to the parolee. To the' extent that such considerations were adopted in Arthurs v. Regan (69 Misc 2d 363, 368), and also to the extent that decision appears to invade upon the discretionary realm of the "parole board, this court chooses not to follow it, as it is not compelled to do so.
In regard to Charge 2, consent or nonconsent to parole conditions does not relieve a parolee of the duty to abide by them, and the expression of an intent not to abide, which again is not denied here, was properly considered by the board.
Having found that the respondent’s determination is sustainable in respect to Charges 1 and 2, the question of substantial evidence supporting the Charge 3 violation need not be reached. But having reviewed the record, the court would add by way of warning to parole boards that something more than reliance upon the parolee’s past criminal record is necessary to support a finding that the parolee is a menace to society, because that record is also used in the decisional process in which it is determined that the inmate is fit to return to society.
The petition is dismissed.

 For ease of reference, the term “ parole ” will be used throughout the opinion to avoid confusion, as the terms, although different, are similar in effect once the inmate is released on either grounds.