John H. Doebb, J.
This is a proceeding pursuant to article 78 of the CPLB wherein a judgment is sought directing the respondents to give a meaningful statement of reasons why release on parole is denied.
The original proceeding was brought by petitioner Thomas A. Cummings (“ Cummings ”). Subsequently, Anthony Di Benadetto (“ Di Benadetto”), Charles Loeicero (“Loeicero”), George Whiteneck (“Whiteneck”) and Clarence Calhoun (“ Calhoun ”) petitioned the court for permission to intervene. The application of Calhoun has become moot. The court has signed an order permitting Loeicero and Whiteneck to intervene, their papers being in order, and will grant herein the application of Di Benadetto to become an intervenor even though his petition is executed on his behalf by his attorney. His wish to *138 intervene is obvious and he qualifies along with the other intervenors.
Application has also been made by petitioner and intervenors (hereinafter referred to as petitioners) to amend the proceeding to include therein class treatment for all inmates in New York State correctional facilities who have been denied release on parole without having been given meaningful reasons for such denial.
The respondents deny the allegations in the petition and oppose the application to treat the matter as a class action, claiming primarily that there is a lack of common questions of law and fact and that the class is indeterminate. The statutory provision for such actions does not appear to be complicated. “ CPLR 1005. Class actions, (a) When allowed. Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all. ’ ’
The courts of New York have not enthusiastically supported class actions (Society Milion Athena v. National Bank of Greece, 281 N. Y. 282; Hall v. Coburn Corp. of Amer., 26 N Y 2d 396). This does not mean such actions are not available, especially after a consideration of the types of actions in which representative relief has been denied. The court is not persuaded by the respondents ’ argument that a class action herein might deny a member of the class the right to select which remedy the class will pursue or deny or that certain inmates might be deprived of their day in court or choice of remedies. As will be seen from the following, there is such a common and general interest of the persons who constitute the class (inmates of New York State correctional facilities who have attained parole eligibility) and those persons are so numerous that it would be impractical and cumbersome to bring them all before the court, that the motion to maintain the within proceeding as a class action is granted. There is the further consideration that the relief requested is general in nature, applies to a single administrative body (New York State Board of Parole), whose authority is derived from one statutory authority (Correction Law, art. 8) and whose determinations affect all members of the class who obviously are all similarly situated.
■ Throughout the entire proceeding, and regardless of which petition is considered, there is but one compelling question before the court: Should the respondent Board of Parole be required to disclose to a prisoner the reasons why parole has *139 been denied? The resulting answer can and should apply to all petitioners and all parole applicants. Eligibility for parole, after all, is achieved by operation of law, not the discretion of the Parole Board. As parole eligibles, all prisoner applicants stand equal. The discretion of the board begins only at the hearing and decision stage. On the basic question posed above, the court is unable to see how each individual challenge made to the board’s policy will differ in any way from a challenge made for a class.
The court will not refer to the .specifics of each petitioner’s case. Their situations are all so similar to each other and to the class that general references will be adequate. The petitioners are confined to the Attica Correctional Facility, serving indeterminate terms of imprisonment for their various and several judgments of conviction. They have all qualified by law for parole consideration and have appeared before the Parole Board. Each has been denied parole with the terse written statement in general “ Hold for one year.” No explanation for denial of parole release was given. Requests were made by them and members of their families or their attorneys to the Parole Board for reasons why their conditional release was denied. These inquiries were generally responded to in broad terms, citing past criminal history or referring to confidentiality of records and the responses are conclusory in nature and give no reasons or explanation why parole was denied. The petitioners allege that there are no valid reasons why they should not have been released on parole.
At the outset, the court wishes to make it clear that it has no intention of making a determination herein whether or not there are valid reasons why the petitioners and others similarly situated should not be released on parole. It must be noted, however, that in some instances the respondents deny any knowledge or information sufficient to form a belief as to certain allegations in the petitions; e.g., petitioner Cummings alleges, inter alia, “ Since 1970 on his return to prison upon his conviction for escape, he has not been involved in any disciplinary infraction * * * Cummings had previously driven an ambulance, worked in the operating area of the hospital at the Elmira Correctional Facility and when paroled before, had worked in a hospital in Rochester.” To this the respondents answered that they had no knowledge or information sufficient to form a belief as to the allegations. This is somewhat difficult to reconcile after a reading of article 8 of the Correction Law wherein the Board of Parole is enjoined to compile and retain *140 at all times complete information relating to all inmates while in prison and also while on parole.
The respondents in their answer assert various affirmative defenses, in essence stating that their actions in granting or denial of parole are performed in accordance with law and that their actions are supported by all the materials presented and reviewed at parole hearings and that parole is a matter of discretion, which discretion is vested solely in the Parole Board. Through counsel they also assert that some parole applicants are given reasons for denial and also through institutional parole officers and others are given suggested forms of proper conduct. Further, that parole release proceedings are not adversary proceedings and questions of due process are not present.
After a review of the recent case law with regard to parole release and the developing body of law relating to due process affecting prison inmates and parolees and probationers, the court finds itself in agreement with the observation of Judge Judd that the refusal of the New York Parole Board to give reasons for denial of parole release appears to be a vanguard for an inevitable change in New York law on the subject. (United States ex rel. Woods v. Regan, Case No. 72-C-1307, March 20,1973 [E. D. N. Y., Judd, J.].)
The concept that due process considerations are not available to those who have been convicted of crimes and are serving duly imposed sentences therefor or have been conditionally released from imprisonment and charged with violation of the conditions simply is no longer tenable in the light of the growing number of cases which have rejected this principle (see Monks v. New Jersey State Parole Bd., 58 N. J. 238 [give reasons for denial of parole]; People ex rel. Menechino v. Warden, 27 N Y 2d 376 [right to counsel at parole revocation hearing]; Morrissey v. Brewer, 408 U. S. 471 [right to minimum due process at parole revocation hearing]; United States ex rel. Bey v. Connecticut State Bd. of Parole, 443 F. 2d 1079 [right to counsel at parole revocation hearing]; United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, 363 F. Supp. 416 [give reasons for denial of parole]; Melson v. Sard, 402 F. 2d 653 [statements made by inmate at parole revocation hearing may not be used in subsequent criminal proceeding]; Clutchette v. Procunier, 328 F. Supp. 767 [right to counsel in disciplinary hearing to aid in exercising constitutional privileges where crime may be involved]; United States ex rel. Harrison v. Pace, Case No. 72-1294, April 27,1973 [E. D. Pa., grant or denial of parole subject to due process considerations; reasons for denial must *141 be given]; Childs v. United States Board of Parole, Case No. 1616-70, Sept. 30, 1973 [D. Co., limited due process in parole application procedures; must give reasons for denial of parole] ). The list is by no means exhaustive but it should be sufficient to lay to rest the contention that due process protections are not available to the petitioners. It must also be noted that with regard to parole application procedures, perhaps in recognition of the inevitable trend of the law, at least half the States have adopted legislation granting the very relief the petitioners herein seek. The petitioners must succeed, notwithstanding the lack of legislation in New York State. Due process in parole anticipation need not carry the same requirements as in parole maintenance but this does not mean that parole application procedures fall beyond the reach of due process requirements. The interests of the parolee facing revocation and the parole applicant are not so different in the light of the Parole Board’s determination to exclude the applicant from due process protections. The stakes are the same, incarceration or conditional freedom (Childs v. United States Bd. of Parole, supra; United States ex rel. Harrison v. Pace, supra).
Parole is a promise made with or confirmed by a pledge of one’s honor; a conditional release of a prisoner serving an indeterminate sentence (Webster’s 7th New Collegiate Dictionary). It is a suspension of the execution of a convict’s sentence, temporarily releasing him from imprisonment on conditions which he is at liberty to accept or reject. He is still under the supervision of the Parole Board, subject to be remanded to prison if he violates the conditions of his parole. A prisoner has no accrued ‘ ‘ right ’ ’ to parole. Sections 213 and 214 of the Correction Law provide for release in defined circumstances and under the statute, “ the prisoner has the right to equal treatment with all other prisoners, and has an earned ‘ right ’ to parole if the Board is in fact of the opinion that there is a reasonable probability that, if released, the prisoner will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, and provided that the Board is satisfied that he will be employed in self-sustaining work (Correction Law §§ 213, 214). Parole is not a gift, but it is a conditional entitlement. It must, in reason, become a legally cognizable ‘ right ’ when there is a manifest correspondence between the prisoner’s situation and the terms of the parole statute.” (United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, 363 F. Supp. 416, 417-418, supra.)
*142 Respondents make much of the fact that parole is a matter of discretion, which discretion is vested solely in the Board of Parole. Perhaps the board’s resistance to the relief requested by the petitioners arises out of a misunderstanding. Required disclosure of the grounds for denial of parole cannot of itself effect a release. The petitioners do not ask that they be released nor does this court intend to direct their release or interfere in any way with the discretionary function of the board. The only request being considered by this court is that which would require the board to give parole applicants meaningful reasons why parole is denied them.
It is ordinarily not the function of the court to engage in either philosophical or empirical evaluations in deciding a case before it. The courts are the forum of the law. The law itself, however, is not blind to socio-psychological or philosophical considerations, otherwise there would be no article 8 of the Correction Law. Without these considerations, we would not have the language of Chief Justice Burger in Morrissey v. Brewer (408 U. S. 471, 477, 484, supra). “ During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system * # * Rather than being an ad hoc exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison * * * The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law.”
Without these considerations there would be no directions to the Board of Parole as contained in section 210 of the Correction Law: ‘ ‘ The division of parole shall aid inmates eligible for parole or conditional release, and those who are on parole or conditional release, to secure employment and shall encourage and promote apprenticeship training of such persons through the assistance and cooperation of industrial and labor organizations.” The question of what assistance, if any, the Board of Parole actually offers to those eligible inmates is not before the court. However, implicit in the admonition to the Division of Parole to “ aid inmates eligible for parole or conditional release ” is the corollary that the Division of Parole shall do nothing to hinder parole or conditional release. To hold *143 that withholding reasons, if there be any, for denial of parole to an eligible inmate is not a hindrance to him in his aspiration to achieve parole status is without logic and in total disregard for the human situation. While disclosure of the grounds of denial cannot effect release of the petitioners, it can furnish them with some guidance for their own rehabilitative effort. In making disclosure the board sacrifices none of its discretionary authority. None of the ingredients available to the board under article 8 of the Correction Law, and especially section 213 of the Correction Law, in considering and exercising its best judgment as to whether parole shall be granted or denied, are in any way challenged or diminished by a requirement that the board inform an inmate of the reasons why parole has been denied him. They are still exclusively vested with the authority to exercise their discretion in carrying out parole objectives. While the judgmental prerogative belongs to the board by law, the exercise of that judgment in an aura of secrecy should not be countenanced. The rudiments of procedural due process are not observed unless the administrative body details the reasons for its findings (Goldberg v. Kelly, 397 U. S. 254). Despite the fact that the Board of Parole must be allowed a wide range of judgment and must be empowered to make determinations that respond individually to the immense variety and complexity of human situations, the board does remain a body of public officers, charged with specific statutory responsibility toward prisoners.
‘ ‘ The prisoners ’ parole interests imply procedural rights that are real * * * Effective judicial review to assure that the prisoner is not denied his conditional ‘ rights ’ without due process, however, requires a statement of the ground of any decision denying parole, for only in that way can the reviewing court determine whether or not the decision is without foundation in fact, or is discriminatory, or is infected by reference to factors that may not be properly considered.” (United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, 363 F. Supp. 416, 418, supra.)
The respondents assert that matters relating to release are not reviewable by a court if done according to law. The law as presently constituted gives to the board tremendous powers in making its decisions on parole release. The law also passes to the board tremendous responsibilities. Under the present policy system, there is no basis upon which to make an informed judgment in determining if the board is exercising its powers in a lawful and responsible fashion. To merely state that they *144 are acting in accordance with law and in a responsible manner is to state a conclusion. If the board is acting in a lawful and responsible manner, and the court has no reason to believe it is not, there should be no discomfort in complying with minimal due process requirements in giving reasons for parole denial; In carrying out any statutory mandate, it is imperative not only that justice be done but that the appearance of justice be apparent. Unless the courts stand apart from administrative bodies, especially those which, exercise a quasi-judicial function, so that they can review objectively the actions of these bodies, there can be no appearance of justice. This concept does nothing to the discretionary powers which the board holds. The board is merely being asked to give their reasons for denial of parole, just as they are required to have reasons and give them (granting parole) when parole is granted. (Correction Law, § 213.) It is difficult to conceive of anything more arbitrary than a terse negative response to a request without giving a reason therefor, especially when the negative answer may be entirely reasonable and proper. Under the present policy system incorporated by the board, the courts and parole applicants must labor in the dark while the board holds to itself in a very private way the reasons it denies parole. The law provides for discretion, not secrecy. The correction system should not tolerate such secrecy and the court will not tolerate it. Otherwise, parole and parole anticipation cannot serve its legitimate function — to direct the prisoner toward effective rehabilitative effort. Parole release is a complex and difficult responsibility.
‘ ‘ But the difficulty of decision and the patent risks involved in giving expression to the ground of a decision denying parole — inviting deceptive enactment of an unreal ‘ rehabilitation ’ charade — cannot justify mute denials that create a risk of anomie and deny guidance.” (United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, 363 F. Supp. 416, 419, supra.)
A challenge to the discretion of the board may be a matter for another day. Reasonable exercise of an administrative function is a matter for today and no harm is done in requiring the Board of Parole to give to petitioners and others similarly situated reasons for parole denial, which they are henceforth directed to do. The relief requested by petitioners is granted to the extent stated in this decision.