Joseph P. Hawkins, J.
Petitioner’s primary contention is that the Parole Board failed to .state the grounds upon which it denied him parole. Additionally, he contends that since the denial Avas unlawful he should be granted parole retroactively.
*796 In view of .the recent ruling by the Court, of Appeals in People ex rel. Donohoe v. Montanye (35 N Y 2d 221), during ¡the pend-ency of the writ ¡herein, the within proceeding, in my opinion, is no longer summarily disposed of, adversely to petitioner, as urged by respondent, by merely citing Matter of Hines v. State Bd. of Parole (293 N. Y. 254) and the more recently decided Matter of Hamm v. Regan (43 A D 2d 344).
Donohoe v. Montanye (supra) considered and promulgated additional procedural, due process safeguards in parole revocation hearings; however, one would be juridically astigmatic in failing ,to apperceive thattits expended parameters of due process, now to be accorded to prisoners in parole revocation proceedings, should also, albeit partially, be applied to their preparóle endeavors. To require the Parole Board to inform the suppliant succinctly of the reasons for denying parole, thus continuing imprisonment, in my opinion, is not to impose an undue burden upon that agency; more importantly, it is consonant with a legally logical extrapolation of Donohoe.
The Parole Board presumably arrives at its decisions .after due deliberation; consequently it can readily, however abbreviated, give its quintessential reasons. To do so,. I believe, would be serving dual virtues: it would help dispel the apparently prevalent sentiment among many inmates, however ill-founded, that the hearings are arbitrary and capricious, largely founded on personal predilections; and, secondly, would obviate a plethora of article 78 proceedings and writs for which there is usually no legal ¡basis save that it provides the only modality whereby a prisoner can obtain some explanation. More importantly, I should also suppose that a curt, terse “no” after years of anxious 'anticipation must be destructive of any real rehabilitative endeavors.
The respondent stresses Matter of Hamm v. Regan (43 A D 2d 344, supra). I, however, note the most persuasive dissenting opinion by Justice .Cooke, whose following language is particularly apposite and cogent to the issue at bar, although, en passent, and contained in a footnote at.page 348. “2. Although it is unnecessary to decide and no decision is made herein as to whether a prisoner in a ‘ normal ’ proceeding is entitled to a similar statement of reasons in the event parole is denied, it is noteworthy that several courts have answered that question in the affirmative (see, e.g., Matter of Cummings v. Began, 76 Misc 2d 137; Matter of Cummings v. Regan, 76 Misc 2d 357; United States ex rel. Johnson v. Chairman, New York State Bd. of Parole, 363 F. Supp. 416 [E. D. N. Y. 1973]; United *797 States ex rel. Harrison v. Pace, 357 F. Supp. 354 [E. D. Pa., 1973]; Childs v. United States Board of Parole [D. D. C., Sept. 30, 1973, Bryant, J.]; Monks v. New Jersey State Parole Bd., 58 N. J. 238).”
A careful consideration of Hamm (supra) discloses that the dissent was not on the ground of noncommunication with the prisoner but rather that the basis upon which the Parole Board reversed itself and ultimately revoked parole, i.e., “ negative community .reaction,” was invidious. In that connection, I believe the dissent is particularly persuasive: “ In order to comply with the rudimentary requirements of due process, the statement of reasons must recite the ultimate fact which led to rescission of parole ‘ with sufficient particularity to enable the prisoner to understand how he is expected to regulate his conduct and to enable a reviewing court to determine whether inadmissible factors have influenced the decision, and to determine whether discretion has been .abused ’ (United States ex rel. Johnson v. Chairman, New York Bd. of Parole, supra, p. 419).” (Hamm, 43 A D 2d 344, 349, supra.)
I do not hold hereby that the Parole Board must render voluminous detailed reports or betray confidential sources; I do hold that it no longer suffices for that agency to invoke Matter of Hines v. State Bd. of Parole (293 N. Y. 254, supra), and thereby, as it were, ring down an “ iron curtain ”, impenetrable by either petitioner or his attorney until an article 78 proceeding or a writ of habeas corpus has been instituted and a hearing held. The Parole Board has sufficient talent or resources to provide its petitioners with a simple explanation, however condensed.
Granted that the United States Supreme Court in Morrisey v. Brewer (408 U. S. 471, 480) held that in parole revocation proceedings the petitioner is not entitled to “ the full panoply of rights” as if it were a criminal proceeding; nevertheless, it did require that the parolee be informed of his alleged parole violations in the notice to be served upon him.
Matter of Cummings v. Regan (76 Misc 2d 357) submitted on petitioner’s behalf, however, was subsequently reversed by the Appellate Division, Third Department (45 A D 2d 415). Significantly, the court in so doing, ¡sharply divided with Mr. Justice Sweeney dissenting, joined by Mr. Justice Cooke.
There is now a conflict of authority on the subject in Matter of Cummings v. Regan (45 A D 2d 222). The Appellate Division, Fourth Department, decided some 20 days prior to the Third Department’s opinion (supra), unanimously affirmed the hold *798 ing that “ due process ” and “ public policy of this State require that a meaningful statement of reasons be furnished to every applicant who has been denied parole release in the exercise of discretion delegated to the Board of Parole.” (p. 224).
During the pendency of the within proceeding, the Appellate Division, Second Department and in Matter of Paulsen (46 A D 2d 661) reversed Special Term which had “ annulled the determination and restored petitioner to parole supervision.” Paulsen (supra) involved a parole revocation proceeding and the parole board sustained 2 of some 11 ‘ ‘ parole violation charges ” relating to his failure to “ make his arrival report ” and to inform his parole officer that after his release he had been interviewed by New York 'City and Rhode Island police authorities. The Appellate Division held (p. 662): “ It has long been recognized that actions taken by the Parole Board, whether to grant or revoke parole, ‘ shall be deemed a judicial function and shall not be reviewable if done in accordance with law.’ (Correction Law, § 212, subd. 10; People ex rel. Menechino v. Warden, 27 N Y 2d 376, 380; Matter of Hines v. State Bd. of Parole, 293 N. Y. 254; People ex rel. Smith v. Deegan, 32 A D 2d 940, 941; People ex rel. Di Lorenzo v. Fay, 13 A D 2d 1034, mot. for lv. to app. den. 10 N Y 2d 707; Matter of Mummiami v. New York State Bd. of Parole, 5 A D 2d 923, 924, mot. for lv. to app. den. 5 N Y 2d 709, mot. for rearg. den. 7 NY 2d 756, cert, den. 362 U. S. 953; cf. Arthurs v. Regan, 69 Misc 2d 363, and Matter of Tinsley v. New York State Bd. of Parole, 73 Misc 2d 289). Thus, as long as the Parole Board, in the exercise of its discretion, does not run afoul of statutory mandates or violate procedural due process, its determination should remain free from judicial review.”
With all due deference," I, submit that Paulsen is distinguishable and hence inapplicable. That petitioner was, indeed, informed of the specific charges; previously, upon his release on parole “he had signed conditions of parole.” Thus, duly forewarned and aware of the terms and conditions under which he had been .released, after a hearing, he was found to have breached 2 of 11 charges. That petitioner had ample notice and knowledge of the bases and reasons for his being returned to prison. Consequently, there was a sufficient predicate for the “judicial function” determining that the Parole Board had acted ‘ ‘ in accordance with law. ’ ’ Indeed, there was more than a modicum of due process accorded to Paulsen. At bar, however, neither the petitioner nor the Attorney-General affords the court 'any information as to why parole was denied. It may well *799 be that there are more than sufficient reasons for denying parole; pone, however, is presented to me. In fact, the answer after denying each and every allegation in the petition, as a ‘ ‘ complete defense” urges ‘ ‘ respondent states ‘ that the action of the Parole Board is not subject to court review. Hence the doctrine of Hines v. Bd. of Parole, 293 N. Y. 254 is still the law of New York’ ”.
I further submit that the terse, concurring opinion of Mr. Justice .Hopkins, and particularly his suggestion to the Parole Board, are not without significance in a proper reading of Paulsen.
If the rejected inmate initiates a judicial proceeding, from my experience derived from the several scores of hearings which I have conducted at Green Haven Correctional Facility involving judicial review of denials of parole, the Assistant Attorney-General with increasing frequency has called upon a senior parole officer to testify as to the factors upon which parole has been denied. In many instances the minutes of the Parole Board hearing have been submitted to me. It thus follows that by the simple process of petitioning a court a prisoner obtains the very relief which the Parole Board now insists he is not entitled to as a matter of law. I submit, whether by design or inadvertence, that the Parole Board by persisting in its position has merely shifted the burden to the courts. Paradoxically and ironically, it thus denies an explanation to those petitioners who unquestionably accept the ruling of the Parole Board but accords more than ample explanation and justification only to those' inmates who have the initiative or temerity to invoke judicial process.
On my own motion, I adjourn the hearing to December 6,1974, the next available date at which a Special Term has been scheduled by the Appellate Division Second Department to be held at Green Haven ¡Correctional Facility for the reasons and purposes hereinbefore set forth. The Parole Board is directed, sufficiently in advance of the aforesaid adjourned date to inform, in writing, the petitioner’s assigned counsel -of the controlling bases and conclusions upon which petitioner was denied parole.