John BERGERSEN, Plaintiff,

v.

Michael J. CODD, Defendant.

No. 77 C 1348.

United States District Court,
E. D. New York.

Dec. 20, 1979.

Joseph Fallek, P.C., Brooklyn, N. Y. by Ira Leitel, Brooklyn, N. Y., for plaintiff.

Allen G. Schwartz, Corp. Counsel, City of New York, New York City by Patrick F. X. Mulhearn, Asst. Corp. Counsel, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff in this action seeking declaratory relief and money damages is a former New York City police officer who claims he

was denied his civil rights when he was dismissed from the Department by order of defendant, then Police Commissioner Codd. He brings suit under 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343, and 28 U.S.C. §§ 2201, 2202, alleging that defendant's conduct violated his rights to due process and equal protection. The action is before the court on defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P.

On June 7, 1974, plaintiff, who held the rank of detective, submitted his application for retirement by virtue of completion of over fifteen years of alleged satisfactory service. The retirement was to have become effective 30 days later at approximately 12:00 midnight on July 6, 1974. At the time he submitted the application, plaintiff claims there were no disciplinary or criminal charges pending against him.

On June 11, 1974, the Department instituted disciplinary proceedings charging plaintiff with having received approximately $3,500 from three other detectives of the Department which were proceeds of an unlawful seizure by those detectives from an alleged narcotics dealer; having failed to report this to his superiors; and having failed to "voucher" the money in violation of Department rules and regulations. After pleading not guilty to the charges, plaintiff proceeded to trial.

The departmental trial commenced on July 1, 1974, after a series of adjournments. It continued over plaintiff's objection to a substitution of the trial commissioner and concluded on July 6, 1974, at approximately 3:00 p. m., the date his retirement was to become effective and retirement benefits were to vest. In a "race against the clock" to provide a final determination of the charges before plaintiff's retirement, the trial commissioner rendered an opinion in which he concluded that:

"Based upon the entire record, and my analysis thereof, in particular the above analysis of the evidence, I respectfully recommend that the Police Department has failed, by a preponderance of the evidence, to establish that the illegally obtained sum of $3,500 was passed to, and received by, Bergersen as alleged in the charges and specifications."

Although conceding that Codd had the power and authority to reject the findings of the trier of fact in the administrative proceeding, plaintiff claims in his first count that Codd's complete rejection of the trial commissioner's findings and subsequent order of dismissal before the 12:00 o'clock deadline violated plaintiff's right to due process of law because it was unaccompanied by any detailed findings of fact to support such a decision. He further claims, upon information and belief, that defendant's action was taken wilfully and in bad faith to deprive him of his right to continued employment and his pension as retaliation for plaintiff's refusal to withdraw his retirement application. This conduct is alleged to deny plaintiff his property rights and to stigmatize him as a corrupt official in violation of due process of law.

In a second count, plaintiff contends that after the determination in his case the Department moved on the same evidence against two other officers approximately two years later. In contrast to his case, however, Codd approved a different trial commissioner's finding of lack of guilt. Plaintiff claims that such divergent treatment, both in the consideration given the cases and in the result, deprived him of equal protection of the laws and represents unfair and invidious discrimination against him.

Defendant moves to dismiss on the ground that this action is barred by the doctrine of res judicata since the issues raised are identical to those presented in plaintiff's petition in the Appellate Division in a proceeding brought pursuant to Article 78, New York Civil Practice Law and Rules. There he sought to set aside the determination of the Police Commissioner on the ground that the action was

"arbitrary, capricious, unlawful and in violation of Petitioner's constitutional right to due process in that there was lacking substantial evidence to support the Police

Commissioner's determination and further that the Police Commissioner did not make an informed decision . . . ." Petitioner's Statement Pursuant to Rule 5531 CPLR.

The following points were raised in plaintiff's brief in that proceeding:

"Point I. The action of the Police Commissioner finding Petitioner guilty of departmental charges contrary to the findings of the Trial Commissioner, was arbitrary, capricious, unlawful and in violation of Petitioner's constitutional rights to due process in that there was lacking substantial evidence to support the Respondent's determination and further that the Respondent did not make an informed decision.

"Point II. The substitution of the Trial Commissioner after the commencement of the hearing and after character witnesses testified on behalf of the Petitioner was improper, prejudicial to Petitioner's case and was in violation of his constitutional rights to due process of law.

"Conclusion. The determination of the Police Commissioner was arbitrary, capricious, illegal and in violation of Petitioner's constitutional rights to due process of law."

By order dated January 10, 1976, a unanimous Appellate Division entered judgment confirming the determination of the Police Commissioner and dismissing the petition. Plaintiff's motion for leave to appeal to the Court of Appeals, which was denied, presented the following question, among others, for appellate review:

"c. Was Petitioner-appellant denied procedural due process of law by the failure of the reviewing authority, the Police Commissioner, to state any reasons for rejecting the recommendation of his hearing officer, sufficient to inform the Court and parties as to the basis thereof?"

Since matters outside the pleadings, namely the transcript of the administrative proceeding and the pleadings and briefs filed in the Article 78 proceeding, have been considered by the court, the motion will be treated as one for summary judgment. See Rules 12(b) and 56, F.R.Civ.P.[1] After careful review of that complete record, it is manifest that plaintiff has had his day in court and that the matters he raises cannot be relitigated here as claimed constitutional violations.

Although courts are understandably reluctant to dismiss civil rights complaints on the theory that prior litigation in State courts bars relitigation on *res judicata* principles, see, *e. g., Ornstein v. Regan*, 574 F.2d 115 (2 Cir. 1978); *Lombard v. Board of Education*, 502 F.2d 631 (2 Cir. 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Williams v. Codd*, 459 F.Supp. 804 (S.D.N.Y.1978), dismissal is appropriate if the identical claim was raised in the State courts, see *Tomanio v. Board of Regents*, 603 F.2d 255 (2 Cir. 1979); *Winters v. Lavine*, 574 F.2d 46, 54 (2 Cir. 1978). See also *Sinicropi v. Nassau County*, 601 F.2d 60 (2 Cir. 1979), *reaffirming Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 274 (2 Cir. 1977). The issue then, assuming the existence of a due process claim, is whether plaintiff submitted the federal claims he attempts to assert here in his Article 78 proceeding. A close comparison of the claims raised in State courts clearly reveals not only their similarity with those raised here but also their complete identity.

In addition to the characterization of plaintiff's claims described in his briefs in the State court, the Article 78 petition also sheds light on the nature of the claims he litigated there. Paragraph 31 states that:

"Clearly, the atmosphere surrounding this trial was obviously a desire to dispose of the trial quickly and fire Petitioner before Petitioner could, in fact, retire.

---

1. We are mindful, however, of the limiting principles the court must adhere to as exemplified in the following cases in this circuit: *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2 Cir. 1978); *Friedman v. Meyers*, 482 F.2d 435, 439 (2 Cir. 1973); *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2 Cir. 1967).

Despite Petitioner's counsel [sic] repeated objection that this procedure [substitution of the trial commissioner, a claim he has apparently abandoned in this civil rights action] was a violation of due process and the Petitioner's constitutional rights, the trial continued."

Paragraph 239 stated that:

"Due to the continued presence of members of the United States Attorney's office during trial and their persistent and constant interest in said case, which was known to the Police Commissioner, it was impossible for Petitioner to obtain a fair administrative trial, as the conduct of the trial was conducted in violation of the Petitioner's constitutional rights to a fair trial and said trial was in violation of the constitutional safeguards and mandates provided by the Constitution of the United States of America and the New York State Constitution as clearly indicated by the unilateral substitution of Trial Commissioners in the middle of a trial and as indicated by the transcripts of the trial."

And paragraph 243 alleged that:

"Upon information and belief, the Police Commissioner was influenced and/or motivated in rejecting the Trial Commissioner Luis Neco's recommendations by facts and circumstances outside the trial record. Further, that the Police Commissioner did not read and analyze the verbatim trial record, as he was required to do before rendering a decision and it is further submitted that in the instant case, where the determination of material facts depend upon a determination of the credibility of witnesses as shown by their demeanor and conduct at the hearing or trial, the report of the person who saw and heard the witnesses must be given great weight, which the Commissioner did not do."

At page 10 of plaintiff's brief on his motion to the New York Court of Appeals, the constitutional argument for a statement of reasons was amplified. After citing extensive New York State authority for the proposition that specific findings were required, plaintiff argued that

"The underlying basis for these decisions was recently expressed in *Cummings v. Regan*, 76 Misc.2d 137, 350 N.Y. S.2d 119 (Sup.Ct.1973):

'The rudiments of procedural due process are not observed unless the administrative body details the reasons for its findings (*Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.[2d] 287).'

"This constitutional argument had been approved by the Federal Courts. In *Raper v. Lucey*, 488 F.2d 748, 753 (1st Cir. 1973), it was held:

'Reasons for governmental action affecting important individual rights must be timely proffered in order to satisfy due process.' (Citations omitted)."

Whether dismissal is grounded on *res judicata* or on principles of collateral estoppel, the court is satisfied that claims were presented to the State courts that preclude their relitigation here under the guise of a civil rights action. *Perrotta v. Irizarry*, 430 F.Supp. 1274 (S.D.N.Y.), *aff'd*, 573 F.2d 1294 (2 Cir. 1977); *Morpurgo v. Bd. of Higher Ed. in City of New York*, 423 F.Supp. 704, 710 (S.D.N.Y.1976); *Hanzimanolis v. Codd*, 404 F.Supp. 719 (S.D.N.Y. 1975), *aff'd*, 538 F.2d 309 (2 Cir. 1976). *Cf. Newman v. Board of Ed.*, 508 F.2d 277 (2 Cir.), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975). This is so, of course, despite the fact that the State court record is silent with respect to the ground or grounds upon which the State courts affirmed the administrative determination. See *Winters v. Lavine, supra*, 574 F.2d at 61.

■ Finally, plaintiff's second claim for relief is also deficient. In paragraphs 39 through 49 of the complaint, plaintiff alleges that his right to equal protection of the laws has been denied since he was found guilty on evidence he claims also supported a finding of innocence in the case of two officers who also were charged with receiving shares of the illegally seized money. Essentially the claim is no more than a contention that Codd's decision in their case

is evidence of the arbitrariness or error of the decision in plaintiff's case. But even though it be assumed that the same evidence was relied on to support divergent results, plaintiff is nonetheless not entitled to relief.

First, the case against the two fellow officers was tried more than two years after plaintiff's departmental trial and before a different trial commissioner. The circumstances existing at the time of the latter trial were apparently quite different. Second, "[n]ot every erroneous determination mounts up to a denial of due process or equal protection." *Richardson v. McFadden*, 563 F.2d 1130, 1131 (4 Cir. 1977) (*en banc*), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), *citing Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Bishop*, petitioner claimed the reasons for his discharge from the police force were so serious as to stigmatize him and damage his reputation in the community. He also contended that the reasons were false. Answering the second contention upon the assumption that petitioner's discharge was a mistake and based on incorrect information, 426 U.S. at 349, 96 S.Ct. 2074, the Court stated:

> "The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired.[13] [Note 13 reads: "Indeed, the impact on petitioner's constitutionally protected interest in liberty is no greater even if we assume that the City Manager deliberately lied. Such fact might conceivably provide the basis for a state-law claim, the validity of which would be entirely unaffected by our analysis of the federal constitutional question."] A contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake." 426 U.S. at 350, 96 S.Ct. at 2079–2080.

Plaintiff here stands in no different—or better—position. His claim of deprivation of due process is unfounded since, as we have already noted, he was provided adequate procedural protections, including judicial review. Notwithstanding plaintiff's claim that no reasons were given for defendant's rejection of the recommendation of the trial commissioner, the departmental findings included in his report constituted a sufficient basis for a determination that plaintiff was guilty of infractions warranting his subsequent discharge. Thus, whether or not defendant was correct in his interpretation of the record, plaintiff was afforded due process in the circumstances, and his claim of denial of equal protection must also fall since he fails to allege any disparity or discrimination of the sort protected by the Constitution. See *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). See also *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940) (Fourteenth Amendment "does not require things which are different in fact or opinion to be treated in law as though they were the same.") A contrary conclusion would permit equal protection attacks on personnel decisions merely upon a claim that one employee rather than another had been discharged. See generally *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

This same fear led the Supreme Court to conclude that:

> "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Proc-

ess Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. at 349–350, 96 S.Ct. at 2080 (footnote omitted).

Accordingly, there being no triable issue of fact, defendant is granted summary judgment dismissing the complaint.

SO ORDERED.